ERIC GRANT
United States Attorney
ROBERT ABENDROTH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>        v.<br><br>DANTE IACOVIELLO,<br><br>              Defendants. | CASE NO. 2:25-CR-0211 DC<br><br>PLEA AGREEMENT |

## I.      INTRODUCTION

**A.      Charged Offense.**

The information in this case charges the defendant, DANTE IACOVIELLO, with one count of violating 18 U.S.C. § 371 – Conspiracy to Solicit Hate Crimes (Count One).

**B.      Scope of Agreement.**

This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California, the Civil Rights Division, and the National Security Division (collectively, the "government") and the defendant, DANTE IACOVIELLO, regarding this case. This plea agreement is an agreement between the above-listed parties, and it does not bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**C.      Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the

PLEA AGREEMENT                                      1

discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.   THE DEFENDANT'S OBLIGATIONS

### A.   Guilty Plea.

The defendant will plead guilty to one count of 18 U.S.C. § 371 – Conspiracy to Solicit Hate Crimes. The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that, with the exception of statements made during the defendant's proffer with the government, any statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.   Waiver of Indictment.

The defendant acknowledges that under the United States Constitution, he is entitled to be indicted by a grand jury on the charge to which he is pleading guilty and that pursuant to Fed.R.Crim.P.

PLEA AGREEMENT                               2

7(b), he agrees to waive any and all rights he has to being prosecuted by way of indictment to the charges set forth in the information. The defendant agrees that at a time set by the Court, he will sign a written waiver of prosecution by Indictment and consent to proceed by Information rather than by Indictment.

### C. Fine.

The parties agree that no fine is appropriate in this case.

### D. Special Assessment.

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.

### E. Violation of Plea Agreement by Defendant/Withdrawal of Plea.

If the defendant violates or breaches this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by failing to plead guilty to the count of the Bill of Information; representing, directly or through counsel, to the government or the Court, that he will not plead to the count of the Bill of Information; moving to withdraw his guilty plea; filing an appeal or other post-conviction proceedings not authorized in Section VII.B; disputing or denying guilt of the offense in the Bill of Information to which the defendant has agreed to plead guilty, or denying or disputing any fact contained in the stipulated factual basis; committing any crime; providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete to the United States or in any litigation or sentencing process in this case; or violating the terms of this agreement or the supplement to the plea agreement in any other manner, including engaging in any post-plea conduct constituting obstruction of justice. The government also shall have the right (1) to prosecute the defendant on any count to which he pleaded guilty; and (2) to file any new charges that

PLEA AGREEMENT                                    3

would otherwise be barred by this plea agreement. The defendant would thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the government.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The judicial determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

F. **Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and

PLEA AGREEMENT 4

provide the described documentation to the United States Attorney's Office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above.

Defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

G. **Supplemental Agreement.**

Defendant agrees to abide by all terms of the Supplemental Agreement between the parties.

H. **Sentencing Enhancements.**

If the Probation Department recommends applying, or the Court applies, the hate crime (§ 3A1.1) and/or terrorism (§ 3A1.4) sentencing enhancements, the Defendant agrees not to object.

### III. THE GOVERNMENT'S OBLIGATIONS

A. **Other Charges.**

If the Court accepts the defendant's guilty plea, the government agrees not to bring any other charges arising from the conduct outlined in the Factual Basis attached hereto as Exhibit A, except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)) and VII.B (Waiver of Appeal and Collateral Attack) herein.

B. **Recommendations.**

    1.    Supplemental Agreement.

The government will make the recommendations set forth in the Supplemental Agreement.

    2.    Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of

the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### C. Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. Truthful information provided during a proffer session with the government may not be used by the Court in calculating the applicable Guideline range or in deciding whether to depart upward from the applicable Guideline range, pursuant to U.S.S.G. § 1B1.8. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, namely, 18 U.S.C. § 371, conspiracy to solicit hate crimes:

1. Defendant knowingly and intentionally conspired and agreed with persons to commit an offense or offenses against the United States, namely, to solicit, command, induce or otherwise endeavor to persuade another person to engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against the person of another in violation of the laws of the United States—specifically, to willfully cause bodily injury to any person because of the actual or perceived race, color, religion, or national origin of any person, in an attempt to kill, in violation of Title 18, United States Code, Sections 249(a)(1) and 249(a)(1)(B)(ii)—under circumstances strongly corroborative of that intent, in violation of 18 U.S.C. § 373; and

2. One or more of such persons who were parties to the conspiracy did any act to effect the object of the conspiracy.

The defendant fully understands the nature and elements of the crimes charged in the information

to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V.   MAXIMUM SENTENCE

### A.   Maximum Penalty.

The maximum sentence that the Court can impose is up to five years of incarceration, a fine of $250,000, or both, a three year period of supervised release and a special assessment of $100.

### B.   Violations of Supervised Release.

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years of imprisonment.

## VI.   SENTENCING DETERMINATION

### A.   Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a). The government is not obligated to recommend any specific sentence.

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional

PLEA AGREEMENT                                      7

rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.  Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea and conviction. The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea and conviction. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E herein.

### C.  Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any

charges previously dismissed).

      D.    **Impact of Plea on Defendant's Immigration Status.**

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

      VIII.    **ENTIRE PLEA AGREEMENT**

Other than this plea agreement and the supplemental agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

      IX.    **APPROVALS AND SIGNATURES**

      A.    **Defense Counsel.**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 09/25/25

                                          GARY SPRINGSTEAD
                                          Attorney for Defendant

      B.    **Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully

understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 9/25/25

DANTE IACOVIELLO
Defendant

C. **Attorneys for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated: September 25, 2025

ERIC GRANT
United States Attorney

ROBERT ABENDROTH
Assistant United States Attorney

EXHIBIT "A"
Factual Basis for Plea(s)

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

Telegram Messenger ("Telegram") is a digital communications platform that allows users from around the world to send encrypted one-on-one messages, participate in group chats, share files, and operate and subscribe to "channels" that broadcast messages and content. "The Terrorgram Collective," commonly referred to as "Terrorgram"—a combination of the words "terrorism" and "Telegram"—is a network of channels, group chats, and users on Telegram that promote white supremacist accelerationism, an ideology centered on the belief that the white race is superior; that society is irreparably corrupt and cannot be saved by political action; and that violence and terrorism are necessary to ignite a race war and "accelerate" the collapse of the government and the rise of a white ethnostate. To achieve its vision of white revolution and domination, members of the Terrorgram Collective have solicited terrorist attacks, including, but not limited to, bias-motivated attacks against groups deemed by Terrorgram to be enemies of the white race; attacks on government infrastructure, such as government buildings and energy facilities, which they believe will ignite a race war and help accelerate the collapse of government and society; and attacks on "high-value-targets"—like politicians and government officials—whom Terrorgram sees as perpetuating an irredeemable society and whose murders Terrorgram believes would sow chaos and further accelerate the government's downfall.

Between January 2022 and September 2024, Defendant Dante Iacoviello, a member of the Terrorgram Collective, conspired and agreed with Defendant Matthew Robert Allison ("Allison"), Defendant Dallas Erin Humber ("Humber"), and other members of the Terrorgram Collective, to solicit individuals to commit bias-motivated attacks targeting victims because of their race, religion, national origin, sexual orientation, and gender identity. In furtherance of that objective, Iacoviello, Allison, and Humber contributed to and disseminated Terrorgram publications "The Hard Reset," and "The Saint Encyclopedia," and created and disseminated content on Terrorgram channels and in Terrorgram chats —for the purpose of soliciting individuals to commit bias-motivated attacks.

"The Hard Reset" is a digital publication explaining and justifying Terrorgram ideology; providing detailed instructions and tactical advice for carrying out bias-motivated violence and committing terrorist attacks on critical infrastructure; providing instructions for making bombs and explosives, including napalm, thermite, chlorine gas, pipe bombs, and dirty bombs; identifying targets to attack; instructing readers how to effectively run a terror cell; celebrating terrorist attacks and violent extremism; and inciting readers to terrorist action in support of Terrorgram's cause. Allison, Humber, and Iacoviello, working together and in collaboration with other members of the Terrorgram Collective, helped create, edit, and disseminate "The Hard Reset." "The Hard Reset" was first disseminated, in PDF form, over Terrorgram on July 14, 2022. Humber later narrated "The Hard Reset," and Humber, Allison, and Iacoviello disseminated it, in PDF and audiobook form, throughout various Terrorgram channels and chats. Iacoviello understood that the purpose of "The Hard Reset" was to incite others to commit acts of violence against those whom Terrorgram members considered to be their racial enemies; and to provide the skills, tools, and advice necessary to successfully carry out attacks.

"The Saint Encyclopedia" is a Terrorgram publication that Iacoviello, Humber, Allison, and other members of the Terrorgram Collective were working on at the time of Humber and Allison's

arrests. "The Saint Encyclopedia" celebrates white supremacist attackers as heroes of the white race—"Saints"—and urges Terrorgram users to follow their path to "Sainthood" by committing an attack in the name of Terrorgram. In Terrorgram chats including "Saint Encyclopedia" and "Artists of TG 2.0," Iacoviello collaborated with Humber, Allison, and other members of the Terrorgram Collective, to organize the project, set deadlines, assign work, and generate, share, edit, and critique content created for the publication. For example, Iacoviello created the proposed cover of "The Saint Encyclopedia," which is comprised of mugshots of white supremacist mass murderers whom Terrorgram celebrates as heroes and Saints. Iacoviello completed at least sixteen separate entries in "The Saint Encyclopedia," each celebrating a different white supremacist mass murderer. The purpose of "The Saint Encyclopedia" was to inspire and incite individuals to commit bias-motivated attacks.

With that goal in mind, Iacoviello, Humber, Allison, and other members of the Terrorgram Collective ran channels and chats where they disseminated content soliciting individuals to commit bias-motivated attacks. Iacoviello ran the Terrorgram channels "Hyperborean Skyline" and "Total Accelleration." On November 14, 2022, Iacoviello posted on his "Total Acceleration" channel an image of a man tied up with rope, along with the following message: "[Victim] has produced 278 interracial pornographic videos. Be the White man who [REDACTS] this jew and you will forever be a hero of your race." The word "redacts" is commonly used by Terrorgram members to mean "kills," and Iacoviello intended that meaning in this context. Iacoviello's purpose in creating and disseminating this post, and sharing similar posts created by others, was to solicit individuals to commit bias-motivated attacks.

Therefore, in light of his described conduct, Dante Iacoviello agrees and stipulates that beginning in or about January 2022, and continuing through in or about September 2024, in the State and Eastern District of California, and elsewhere, Iacoviello knowingly and intentionally conspired and agreed with Dallas Humber, Matthew Allison, and other members of the Terrorgram Collective, to solicit, command, induce, or otherwise endeavor to persuade another person to engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against the person of another in violation of the laws of the United States—specifically, to willfully cause bodily injury to any person because of the actual or perceived race, color, religion, or national origin of any person, in an attempt to kill, in violation of Title 18, United States Code, Sections 249(a)(1) and 249(a)(1)(B)(ii)—under circumstances strongly corroborative of that intent, in violation of 18 U.S.C. § 373.

Dante Iacoviello further agrees and stipulates that he and other members of the conspiracy: (1) intentionally selected victims as the objects or targets of the solicited acts of violence because of their actual or perceived race, color, religion, and national origin; and (2) intended, through their conduct, to influence or affect the conduct of government by intimidation or coercion, to retaliate against government conduct, and to intimidate or coerce a civilian population.

Dated: 9/25/25

_____
DANTE IACOVIELLO, Defendant

PLEA AGREEMENT                                12